IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                3:02-CR-00120-BR

       Plaintiff,                        OPINION AND ORDER

v.

SID EDWARD WILLIS, JR.,

       Defendant.


**BILLY J. WILLIAMS**
United States Attorney
**Scott M. KERIN**
Assistant United States Attorney
1000 S.W. Third Avenue
Suite 600
Portland, OR 97204
(503) 727-1000

       Attorneys for Plaintiff

**TONIA L. MORO**
19 S. Orange Street
Medford, OR 97501
(541) 973 2063

       Attorney for Defendant

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on remand from the Ninth Circuit. For the reasons that follow, the Court concludes it does not need to conduct further sentencing proceedings and declines to revise Defendant's existing sentence.

## BACKGROUND

The Court takes the underlying facts from evidence adduced at the May 20, 2013, evidentiary hearing on Defendant Sid Edward Willis's Motion to Suppress and from the case record in this matter.

On May 24, 2012, Greg Morris and his girlfriend, Clarisse Smith, drove to a Plaid Pantry market in Southeast Portland. Morris went into the Plaid Pantry, and Smith remained in the car. Several minutes later Smith went into the market and told Morris that Defendant had made threatening statements to Smith while displaying a handgun including that Willis asked Smith why Morris was "mugging" him (*i.e.*, giving Defendant a "weird look"). When Morris exited the Plaid Pantry, Defendant and another man approached Morris. Defendant pulled a handgun from his side pocket and pointed it at Morris's chest. Defendant asked Morris why he was "mugging" him and stated "you can't be mugging me. I'll kill you. I'm a gangsta." Defendant then demanded Morris drive him to S.E. 102nd Street.

Morris and Smith, however, were able to get away from Defendant and to call 911. When officers arrived, Defendant fled the Plaid Pantry parking lot, but he was ultimately detained a short distance away. A police officer then brought Morris to the area where other officers had detained Defendant. Morris positively identified Defendant as the man who threatened him with a gun and stated: "I guarantee that's the guy." In addition to Morris's identification of Defendant an officer who reviewed the surveillance video footage at the Plaid Pantry testified the video showed Defendant pointing his gun at Morris.

On June 5, 2012, Defendant was charged in an Indictment in Case No. 3:12-CR-00292-BR with one count of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1).

On June 5, 2012, Magistrate Judge John V. Acosta issued an Arrest Warrant for Defendant based on a supervised-release violation in a pre-existing matter, Case No. 3:02-CR-00120-BR, as a result of the Indictment in Case No. 3:12-CR-00292-BR.

On May 10, 2013, Defendant filed a Motion to Suppress Evidence in Case No. 3:12-CR-00292-BR. On May 20, 2013, the Court conducted an evidentiary hearing, heard oral argument on the Motion to Suppress, and denied Defendant's Motion for the reasons stated on the record.

On July 22, 2013, Defendant pled guilty at a change-of-plea hearing to the charge in Case No. 3:12-CR-00292-BR.

3 - OPINION AND ORDER

On December 23, 2013, the Court held a sentencing hearing in Case No. 3:12-CR-00292-BR and adjudicated the supervised-release violation in this matter, Case No. 3:02-CR-00120-BR. Based on evidence adduced at the suppression hearing, the Court found Defendant violated the conditions of his supervised release when he committed the state-law offense of unlawful use of a weapon in violation of Oregon Revised Statute § 166.220(1)(a). The Court also found Defendant's conduct constituted a "crime of violence" pursuant to U.S.S.G. § 4B1.2 and, therefore, that conduct qualified as a Grade A violation of his supervised release pursuant to U.S.S.G. § 7B1.1(a)(1). The Court sentenced Defendant to the statutory maximum of 60 months and ordered that revocation sentence to run consecutively to the 180-month sentence that the Court imposed in Case No. 3:12-CR-00292-BR.

Defendant appealed the sentence for his supervised-release violation. On appeal Defendant conceded his conduct on May 24, 2012, constituted unlawful use of a weapon in violation of Oregon Revised Statute § 166.220(1)(a), but he asserted violation of that statute is not categorically a "crime of violence" for purposes of U.S.S.G. § 7B1.1 and, therefore, does not constitute a Grade A violation. According to Defendant, therefore, the Court based its revocation sentence on an erroneously calculated guideline range for his supervised-release violation.

On July 29, 2015, the Ninth Circuit issued an Opinion on

4 - OPINION AND ORDER

Defendant's appeal in which it addressed as an issue of first impression: "[H]ow to determine whether uncharged conduct that comprises a criminal offense constitutes a crime of violence for purposes of a supervised release revocation." *United States v. Willis*, 795 F.3d 986, 992 (9th Cir. 2015). The court noted although it has a "well-established" procedure to determine whether a prior conviction constitutes a crime of violence for purposes of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924, as set out in *Taylor v. United States*, 495 U.S. 575 (1990), there is a "critical distinction" between the supervised-release context and the ACCA context because in the ACCA context the court must determine whether a prior conviction is a "crime of violence." In making that determination the court must "compare the elements of the statute of conviction with a federal definition of the crime to determine whether conduct proscribed by the statute is broader than the generic federal definition." *Willis*, 795 F.3d at 992 (quotation omitted). "The crime of conviction is categorically a 'crime of violence' only if the full range of conduct covered by the statute falls within the meaning of that term." *Id.* (quotation omitted). The court "may not look 'to the particular facts underlying those convictions.'" *Id.* (quoting *Descamps*, 133 S. Ct. at 2283).

In contrast, in the supervised-release context "there need not be a prior conviction. Rather, after considering the

5 - OPINION AND ORDER

defendant's conduct, the court may revoke the defendant's supervised release if the defendant's conduct constituted 'another federal, state, or local crime' while on supervised release, 'whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct.'" *Willis*, 795 at 992 (quoting U.S.S.G. § 7B1.1 cmt. n.1). "'[T]he grade of the violation is to be based on the defendant's actual conduct.'" *Id.* (quoting U.S.S.G. § 7B1.1 cmt. n.1).

Notwithstanding this critical distinction, the court concluded the *Taylor* categorical approach applies in the supervised-release context. *Id.* at 992. The court described the approach in the supervised-release context as follows: "[T]he court must: (1) determine that the defendant's conduct constituted a federal, state, or local offense, and (2) determine if such an offense meets the specified criteria. For [a Grade A violation] the applicable criteria are that the offense is punishable by a term of imprisonment exceeding one year and is a crime of violence." *Id.* at 993 (quotations omitted).

To evaluate the second part of the *Taylor* approach in the supervised-release context "the court must determine whether the applicable federal, state, or local offense (as opposed to the defendant's conduct that constituted such an offense) is a crime of violence" as defined in § 4B1.2(a) of the Sentencing Guidelines. *Id.* The court noted this evaluation was similar to

6 - OPINION AND ORDER

the one performed in the ACCA context although in the ACCA context the court "identifies the statutory offense for which the defendant was *convicted,* while in the supervised release context, the court may need to identify a statutory offense for which the defendant *could have been convicted."  Id.* (emphasis in original).

   The court then noted there is

> another important distinction between the supervised release context and the ACCA . . . context[]. In the supervised release context, the court is responsible for determining whether the defendant's uncharged conduct constitutes a particular statutory offense, and only then applying the separate *Taylor* analysis. Accordingly, [when] a statute is divisible and "lists multiple, alternative elements, and so effectively creates several different . . . crimes," *Descamps*, 133 S. Ct. at 2285, the court may determine that the defendant's uncharged conduct constitutes one of those multiple crimes. In other words, a court may determine whether the defendant's conduct constituted "a particular substantive offense contained within the disjunctively worded statute," *see Rendon v. Holder*, 764 F.3d 1077, 1086 (9th Cir. 2014), that constitutes a crime of violence.
>
> In the ACCA . . . context[], by contrast, a court cannot consider a defendant's conduct in order to determine whether the defendant was convicted of an alternate crime that constitutes a crime of violence. *Descamps*, 133 S. Ct. at 2283. Instead, a court must look to "certain judicial records to determine whether the defendant was necessarily convicted of the elements of a crime listed in a divisible statute that is a federal generic offense.

*Id.* at 993-94 (quotations omitted).  Thus, in summary,

7 - OPINION AND ORDER

> in a supervised release revocation case, a
> district court must determine by a preponderance
> of the evidence that the defendant's conduct
> constituted a federal, state, or local offense.
> See U.S.S.G. § 7B1.1(a)(1). After identifying the
> statutory offense, the court should use the *Taylor*
> categorical approach to determine whether that
> offense criminalizes the same or less conduct than
> the federal generic offense of a "crime of
> violence," and is therefore a categorical match.
> If it is, then the court can conclude that the
> defendant committed a Grade A violation of
> supervised release. If the statutory offense
> criminalizes more conduct than the federal generic
> offense, the court should consider whether the
> statute is divisible and contains "one statutory
> phrase corresponding to the generic crime and
> another not." *Descamps*, 133 S. Ct. at 2286. If
> the statutory offense is divisible, the district
> court should specify which of the multiple
> offenses in the statute the defendant's conduct
> constituted. The court must then determine
> whether the specific offense corresponding to the
> defendant's conduct is a categorical match to the
> federal generic offense of "crime of violence."
> Only if there is such a match can the court
> conclude that the defendant committed a Grade A
> violation of supervised release.

*Id.* at 994. The court also noted

> nothing in the Sentencing Guidelines or our case
> law requires this sequence in the supervised
> release revocation context. Accordingly, a
> district court considering a supervised release
> revocation may instead first determine that the
> criminal statute at issue is divisible, next
> determine that the defendant's conduct constitutes
> one of the multiple offenses included in the
> statute, and then consider whether that specific
> offense constitutes a crime of violence.

*Id.* at 994 n.6.

The Ninth Circuit then applied the above principles to Defendant's supervised-release violation. The Ninth Circuit

8 - OPINION AND ORDER

noted this Court concluded Defendant's conduct constituted the offense of unlawful use of a weapon in violation of Oregon Revised Statute § 166.220(1)(a) and the parties did not challenge this Court's conclusion on appeal. The parties also did not challenge on appeal that violation of § 166.220(1)(a) is punishable by a term of imprisonment exceeding one year.

The Ninth Circuit, therefore, next applied the *Taylor* approach to determine whether § 166.220(1)(a) is a "crime of violence," which would result in Defendant having committed a Grade A supervised-release violation:

> A person violates section 166.220(1)(a) if the person "[1] [a]ttempts to use unlawfully against another, or [2] carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon as defined in ORS 161.015." Or. Rev. Stat. § 166.220(1)(a). The district court apparently assumed section 166.220(1)(a) is categorically a crime of violence and accordingly did not conduct a divisibility analysis. . . . [B]efore determining whether section 166.220(1)(a) is categorically a crime of violence, we think it prudent to first determine *whether it is divisible. We conclude it is.* See *Descamps*, 133 S. Ct. at 2285. The statute is written in the disjunctive, and under Oregon law, it "presents alternative ways in which a person can commit the crime: by attempting to use a deadly weapon unlawfully, or by carrying or possessing a deadly weapon with intent to use it unlawfully." *State v. Alvarez*, 240 Or. App. 167, 246 P.3d 26, 29 (2010). In other words, section 166.220(1)(a) effectively creates two different crimes, each with a distinct set of elements: (1) attempting to use a deadly weapon unlawfully against another (the "attempt offense"), and (2) carrying or possessing a deadly weapon with intent to use it unlawfully (the "possession offense"). See *id.*

9 - OPINION AND ORDER

> Because the statute is divisible, we consider whether each offense constitutes a crime of violence under § 4B1.2(a) of the Sentencing Guidelines. Turning first to the attempt offense under section 166.220(1)(a), we conclude it constitutes a crime of violence as defined in § 4B1.2(a)(1) of the Sentencing Guidelines. Section 166.220(1)(a) prohibits "[a]ttempts to use [any dangerous or deadly weapon] unlawfully against another." Oregon defines "use" as employing a weapon to inflict harm or injury, or to threaten immediate harm or injury. Accordingly, a person who commits an attempt offense under section 166.220(1)(a) necessarily attempts to employ a weapon to inflict harm or injury or to threaten immediate harm or injury to another. Section 166.220(1)(a) therefore "has as an element the use, attempted use, or threatened use of physical force against the person of another." *See* U.S.S.G. § 4B1.2(a)(1); *see also Rosales-Rosales v. Ashcroft*, 347 F.3d 714, 717 (9th Cir. 2003)(holding that a statute which prohibits threats to commit a crime that "will result in death or great bodily injury to another person . . . has as an element the . . . threatened use of physical force against the person or property of another.").
>
> We next consider whether the possession offense under section 166.220(1)(a) constitutes a crime of violence as defined in § 4B1.2(a) of the Sentencing Guidelines. . . . [T]he possession offense does not include as an element "the use, attempted use, or threatened use of physical force against the person of another." . . . It therefore constitutes a "crime of violence" only if it falls within the residual clause of § 4B1.2(a), which defines such a crime as one that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *See id.* § 4B1.2(a)(2).
>
> It is an open question, however, whether this residual clause remains valid in light of *Johnson* [in which the Supreme Court invalidated the residual clause of the ACCA].

\* \* \*

10 - OPINION AND ORDER

> Like "violent felony" in ACCA, "crime of violence" in § 4B1.2(a)(2) of the Sentencing Guidelines is defined as including an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." . . . . [W]e have not yet considered whether the due process concerns that led *Johnson* to invalidate the ACCA residual clause as void for vagueness are equally applicable to the Sentencing Guidelines.
>
> We need not resolve this issue to dispose of this appeal. The district court did not undertake the divisibility analysis, and therefore did not state whether [Defendant's] uncharged conduct constituted the attempt offense, the possession offense, or both offenses under section 166.220(1)(a). . . . We think the better course is to remand to the district court to determine whether [Defendant's] conduct constituted the attempt or possession offense, or whether his conduct otherwise constituted a Grade A violation, and undertake further proceedings as necessary.

*Id.* at 994-96 (citations omitted)(emphasis added).

Accordingly, when the Ninth Circuit remanded the matter to this Court in November 2015, it directed this Court to indicate which § 166.220(1)(a) offense that Defendant committed and, if necessary, to conduct further sentencing proceedings. The Ninth Circuit made clear that this Court could permissibly conclude Defendant's conduct constituted a Grade A violation and his sentence would stand if the Court found on remand that Defendant's conduct violated the attempt offense in § 166.220(1)(a).

On December 12, 2016, Defendant filed his Sentencing Memorandum in which he asserts the Ninth Circuit's "rationale for deciding that [§ 166.220(1)(a)] is a crime of violence has been

11 - OPINION AND ORDER

undercut by intervening higher authority[, which the] Court must apply . . . to re-sentence [Defendant]." Def.'s Mem. at 1. Specifically, Defendant asserts "the panel's application of the *Descamps* analysis to [§ 166.220(1)(a)] is no longer valid in light of the intervening higher authority" of *Almanza-Arenas v. Lynch*, 815 F.3d 469 (9th Cir. Dec. 28, 2015)(en banc), and *Mathis v. United States*, 136 S. Ct. 2243 (2016).

On January 20, 2017, the Court entered an Order directing the government to file a Response to Defendant's Sentencing Memorandum.

On February 16, 2017, the government filed a Response in which it asserts the intervening authority on which Defendant relies is inapplicable in the context of this supervised-release sentencing.

## DISCUSSION

### I. Divisibility

As noted, Defendant asserts the Ninth Circuit's finding in *Willis* that § 166.220(1)(a) is divisible is undercut by two later cases that evaluated divisibility in the ACCA context. Specifically, Defendant asserts the panel in *Willis* did not determine

> whether a jury would have been required to unanimously conclude that a defendant attempted to use unlawfully against another . . . any dangerous or deadly weapon or whether members of the jury could all find that a defendant either attempted to use unlawfully against another or carried or possessed with intent to use unlawfully against another any dangerous or deadly weapon. [The Ninth Circuit] declared the attempt clause to be an element because of the disjunctive and something stated in *Alvarez*. Those factors do not unequivocally support a finding that the attempt clause was a separate element and not merely one means of three that members of the jury could find to convict.

Def.'s Sentencing Mem. at 13-14. Defendant concedes Oregon courts have not determined whether jury concurrence is required in a prosecution for § 166.220(1)(a), but it has reached that conclusion as to other statutes. Defendant, nevertheless, asserts "this Court cannot be certain whether a defendant convicted of [§ 166.220(1)(a)] was convicted of the generic offense - arguably the attempt - or the possession offense which is not the generic offense." Thus, according to Defendant, this Court cannot conclude violation of § 166.220(1)(a) is a crime of violence because only the assault offense is "arguably a crime of

13 - OPINION AND ORDER

violence."[1]

The government points out in its Response that the Ninth Circuit unequivocally held in *Willis* that § 166.220(1)(a) is divisible. As noted, the Ninth Circuit concluded § 166.220(1)(a) creates two different crimes with different elements: an attempt offense and a possession offense. No Ninth Circuit panel has contradicted this decision, and no *en banc* decision has overruled it. In addition, the parties do not cite any other Ninth Circuit case that questions that conclusion in the supervised-release context. Thus, the panel's decision is the "law of the case" which this Court must apply. *United States v. Jingles*, 702 F.3d 494, 498 (9th Cir. 2012).

In addition, the Ninth Circuit reached its decision in *Willis* at least in part based on the fact that in *State v. Alvarez*, 240 Or. App. 167 (2010), the Oregon Court of Appeals interpreted § 166.220(1)(a) as creating two different crimes with

---

[1] The Court questions Defendant's assertion (based on the Supreme Court's holding in *Johnson*) that only the attempt offense is "arguably" a crime of violence under U.S.S.G. § 4B1.2 in light of the Supreme Court's later decision in *Beckles v. United States*, No. 15-8544, 2017 WL 855781 (Mar. 6, 2017), in which the Supreme Court held the residual clause of U.S.S.G. § 4B1.2 is not void for vagueness. Accordingly, as the Ninth Circuit noted in *Willis*, if the possession offense of § 166.220(1)(a) "otherwise involves conduct that presents a serious potential risk of physical injury to another," it constitutes a crime of violence under § 4B1.2. This Court, however, does not need to decide whether the possession offense also constitutes a crime of violence under § 4B1.2 because the Court concludes § 166.220(1)(a) is divisible and Defendant's conduct constituted a violation of the attempt offense.

14 - OPINION AND ORDER

different elements. *Alvarez* involved a merger issue concerning § 166.220(1)(a) and assault under Oregon Revised Statute § 163.185. When deciding whether the conviction for violation of § 166.220(1) merged with the convictions for assault, the Oregon Court of Appeals noted

> when a statute contains alternative forms of a single crime (as, for example, unlawful use of a weapon, which can be committed either by (1) carrying or possessing a dangerous weapon or by (2) attempting to use one), we will look to the indictment to determine which form is charged, and we use the elements of the charged version in the merger analysis.
>
> * * *
>
> As we have recently noted, [§ 166.220(1)(a)] presents *alternative ways in which a person can commit the crime*: by attempting to use a deadly weapon unlawfully, or by carrying or possessing a deadly weapon with intent to use it unlawfully. *Cufaude*, 239 Or. App. at 192, 244 P.3d 382. Here, Count 2 of the indictment alleged that defendant "did unlawfully and with the intent to use unlawfully against another, carry or possess a dangerous weapon, to-wit: a bat." Thus, the pleaded elements of ORS 166.220(1)(a), with respect to the bat count, are: (1) carrying or possessing; (2) a dangerous or deadly weapon; (3) with intent to use it unlawfully; (4) against another.

240 Or. App. at 171-72 (emphasis added). The Oregon Court of Appeals reached a similar conclusion in *State v. Durst*, 248 Or. App. 689 (2012). In *Durst* the court reviewed the defendant's conviction for violation of § 166.220(1)(a) and concluded the trial court did not err when it instructed the jury only as to the elements of the attempt offense of § 166.220(1)(a). Thus,

15 - OPINION AND ORDER

*Alvarez* and *Durst* indicate Oregon courts treat § 166.220(1)(a) as a divisible crime with separate and distinct elements. In *Rendon v. Holder*, 764 F.3d 1077 (9th Cir. 2014), the Ninth Circuit held the court may conclude the statute is divisible when a state has interpreted a statute as creating different crimes. *Rendon* has not been overruled or called into question on that point.

The Court, therefore, concludes § 166.220(1)(a) is divisible.

## II. Analysis of Defendant's Conduct

As noted, the Ninth Circuit concluded in *Willis* that the attempt offense of § 166.220(1)(a) constitutes a crime of violence pursuant to § 4B1.2. Thus, if this Court finds Defendant's "actual conduct" meets the definition of the attempt offense of § 166.220(1)(a), it follows that Defendant committed a Grade A violation and, therefore, the Court need not resentence Defendant. *Willis*, 795 F.3d at 990; U.S.S.G. 7B1.1 cmt. n.1.

The Court, therefore, reviews the following facts adduced at the suppression hearing relevant to Defendant's supervised-release conduct:

On May 24, 2012, Morris and Smith, drove to a Plaid Pantry market in Southeast Portland. Morris went into the Plaid Pantry and Smith remained in the car. Several minutes later Smith went into the market and told Morris that Defendant had made threatening statements to Smith and displayed a handgun.

16 - OPINION AND ORDER

Defendant asked Smith why Morris was "mugging" him.  When Morris exited the Plaid Pantry he was approached by Defendant and another man.  Defendant pulled a handgun from his side pocket and pointed it at Morris's chest.  Defendant asked Morris why he was "mugging" him and stated "you can't be mugging me.  I'll kill you.  I'm a gangsta."  After threatening to kill Morris, Defendant demanded Morris drive him to S.E. 102nd Street.  Morris, however, was able to get away with his girlfriend, and call 911.

As noted, in *Durst* the Oregon Court of Appeals pointed out that "to establish the crime of unlawful use of a weapon, the state must prove . . . [Defendant] intentionally attempted to use unlawfully against [the victim] any dangerous weapon."  248 Or. App. at 371.  The court in *Willis* noted Oregon defines "use" as "employing a weapon to inflict harm or injury, or to threaten immediate harm or injury."  795 F.3d at 995 (quotation omitted).  Accordingly, to find Defendant's conduct constituted the attempt offense, the Court must find by a preponderance of the evidence that Defendant intentionally attempted to employ a dangerous weapon to inflict harm or injury or to threaten immediate harm or injury unlawfully against the victim.

Based on the evidence adduced at the suppression hearing, the Court finds by a preponderance of the evidence that on May 24, 2012, Defendant intentionally employed a dangerous weapon

17 - OPINION AND ORDER

to threaten immediate harm or injury unlawfully to Morris. The Court, therefore, concludes Defendant committed the attempt offense of § 166.220(1)(a), which is a crime of violence pursuant to U.S.S.G. § 4B1.2 and, as noted, a Grade A supervised-release violation.

With this finding, the Court need not conduct further sentencing proceedings in this matter because the Court remains satisfied that the 60-month revocation sentence imposed to run consecutively to the new law violation was, in all respects, well warranted. The revocation sentence remains in effect.

## CONCLUSION

For these reasons, the Court concludes the sentence this Court previously imposed in this matter is well supported and remains in effect.

IT IS SO ORDERED.

DATED this 14th day of March, 2017.

_____
ANNA J. BROWN
United States District Judge